# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

JOANNA LAMBEAU,

                Plaintiff,

v.                                CIVIL ACTION NO.  3:23-0438

GRAND ISLAND EXPRESS, INC.,

                Defendant.

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant's Motion for Summary Judgment. *See* ECF No. 22. Upon review, the Court **GRANTS** the Motion.[1]

## BACKGROUND

Defendant Grand Island Express, Inc. provides temperature-controlled transportation throughout the eastern United States. *See* Def.'s Mem., Ex. B ¶ 3 ("Mowrey Decl."). In September 2012, Grand Island hired Joanna Lambeau as a truck driver. *See* Def.'s Mem., Ex. C at 54:24–55:5 ("Lambeau Dep."). She was as an at-will employee. *See* Mowrey Decl. ¶ 6; Def.'s Mem., Ex. B.1 at 8 ("[B]oth Grand Island Express and the employee are free to terminate the employment relationship at any time for any or no reason."); *id.*, Ex. B.2 at 144 (same). In March 2023, Grand Island fired Lambeau. *See* Mowrey Decl. ¶ 24.

This case is about the reason for her termination.

---

[1] The Court also considered Defendant's Memorandum in Support of its Motion for Summary Judgment ("Def.'s Mem."), ECF No. 23; Plaintiff's Response to Defendant's Motion & Memorandum for Summary Judgment ("Pl.'s Resp."), ECF No. 24; and Defendant's Reply Memorandum in Support of its Motion for Summary Judgment ("Def.'s Reply"), ECF No. 25.

# I

Lambeau showed promise as an employee. Between September 2012 and November 2022, she saw her pay increase nearly every year. *See* Def.'s Mem., Ex. D at 14:8–15:5 ("Mowrey Dep.") (explaining pay increases every year of experience "up to 10-plus years, which is max pay"); Pl.'s Mem., Ex. 3 at 1–2 (increases in 2018 and 2019); *id.*, Ex. 4 at 1 (increase in 2020); *id.* at 2 (increase in 2021). *But see id.*, Ex. 5 at 2 (no increase in 2022 because "[r]isk score" and "[i]dle time" were "extremely high").

During this period, Lambeau also received several awards for her safe driving. In 2019, the Nebraska Trucking Association awarded Lambeau the President's Safe Driver's Club Award for two years of no accidents or citations while driving. *See id.*, Ex. 6. In September 2022, the NTA gave Lambeau another President's Safe Driver's Club Award—this time for three years of no accidents or citations. *See id.*, Ex. 7. On November 25, 2022, Grand Island itself welcomed Lambeau into its "elite" Million Mile Safe Driving Club—a "great accomplishment." *Id.*, Ex. 8.

In her performance reviews, Lambeau received mostly "Meets Expectations." *See id.*, Ex. 3 at 1–2 (receiving "Meets Expectations" in 17/20 categories); *id.*, Ex. 4 at 1–2 (15/20); *id.*, Ex. 5 at 1–2 (14/20). Grand Island also repeatedly praised her for little to no delivery failures. *See id.*, Ex. 3 at 2 (no delivery failures); Ex. 4 at 2 ("Joanna does a great job booking on loads and getting the best choice in miles); Ex. 5 at 2 ("[v]ery low service failures which is great").

Still—Lambeau was not perfect. As time passed, she received more "Needs Improvements" in her performance reviews. *See id.*, Ex. 3 at 1–2 (three in 2019); *id.*, Ex. 4 at 1–2 (five in 2021); *id.*, Ex. 5 at 1–2 (six in 2022). Grand Island also encouraged Lambeau to reduce her "idle time" to less than 10% in three different reviews to no avail. *See id.*, Ex. 3 at 3 (19.87% in 2018 and 13.56% in 2019); *id.*, Ex. 4 at 2 (33.33% in 2021); *id.*, Ex. 5 at 2 (43.1% in 2022).

Finally, Lambeau had a history of incidents. *See* Def.'s Mem., Ex. B.3 at 183 (noting seventeen "accidents" prior to November 30, 2022). Between 2018 and 2022 alone, Lambeau had two flat tires, two preventable "crashes," one preventable "incident," and a run-in with a broom-handle. *See id.*, Ex. 4 at 4; *id.*, Ex. 5 at 3. Given this history, Grand Island placed Lambeau in its highest risk category two years in a row. *See id.*, Ex. 4 at 4 (2021); *id.*, Ex. 5 at 4 (2022).[2]

## II

On November 30, 2022, Lambeau found herself in a dead end on a delivery trip. *See* Lambeau Dep. at 67:20–68:5. While turning around, she got her trailer stuck "on a mound of gravel." *Id.* at 68:7–9. Eventually, a tow truck pulled her back on the road. *See* Mowrey Decl. ¶ 18. *See also* Lambeau Dep. at 70:19–71:1. When Lambeau tried to continue her delivery, she got stuck again by hitting a viaduct under a bridge. *See id.* at 71:19–72:2. *See also* Mowrey Decl. ¶ 19. A tow truck helped her get free. *See* Lambeau Dep. at 71:23–24. Lambeau reported both incidents to Grand Island. *See* Def.'s Mem., Ex. B.3 at 183, 194–95.

On March 6, 2023, Lambeau ran into trouble again. She failed to conduct a post-trip inspection after parking her truck. *See* Mowrey Decl. ¶ 20; Lambeau Dep. at 74:17–20. As a result, she failed to report a flat tire and damage to her truck's mudflap and mudflap brackets. *See* Mowrey Decl. ¶ 20; Lambeau Dep. at 74:23–75:10. Later the same day, Lambeau hit an electrical power box in Grand Island's company yard. *See id.* at 75:22–76:7; Mowrey Decl. ¶ 23. She did not report the incident to Grand Island. *See id.* ¶ 24; Mowrey Dep. at 68:5–8 ("[T]he last accident [with] the electrical box, that was reported to me by the shop, not her.").

---

[2] When asked whether Lambeau received a "less than satisfactory" performance evaluation before 2019, Grand Island responded: "[It] wouldn't recall." Mowrey Dep. at 25:15–19.

Grand Island summarized all three incidents in Motor Accident Reports. Each Report lists Lambeau's age, but no birthdate. *See* Def.'s Mem., Ex. B.3 at 183 (tow truck incidents); *id.*, Ex. B.4 at 201 (tire incident); *id.*, Ex. B.5 at 207 (power box incident).

### III

On March 12, 2023, Lambeau turned sixty-five. *See* Lambeau Dep. at 96:12–13; Pl.'s Mem., Ex. 11 at 2 (listing birthdate). The next day, Safety Director Lucas Mowrey terminated her. *See* Mowrey Decl. ¶¶ 2, 26.

### IV

The parties dispute why the termination occurred. Mowrey maintains he fired Lambeau for multiple safety policy violations in a short period of time. *See* Mowrey Dep. at 79:1–21; 80:23–82:3. He claims he did not review Lambeau's performance reviews, age, or birthdate before the termination. *See* Mowrey Decl. ¶¶ 28–31.

Instead, he cites Grand Island's Driver's Manual. According to the Manual, drivers must report all "accidents" or "collisions" involving a truck to Grand Island. *See* Ex. B.2 at 158 ("Report immediately, to your Fleet Manager, Safety Department, and Worker's Compensation ALL job-related accidents, no matter how minor."); 167 ("Call the Safety Department [i]mmediately no matter how minor the collision is."); 168 ("If you are in an accident or have damage to report, ALWAYS contact safety first so they can start a report.").³

Once reported, Grand Island reviews the incident. *See id.* at 166. Grand Island then—"in the discretion of management"—may punish a driver in several ways. *Id.* at 164. It may issue an

---

³ An "accident" occurs when a driver causes a "fatality;" "bodily injury to a person who immediately receives medical treatment away from the scene of the accident;" or "disability damage to one or more motor vehicle(s) causing it (them) to be towed from the scene." *Id.* at 167. A "collision" occurs "any time [a] tractor, trailer, or load meets any object other than the road bed." *Id.* at 166. In short, all accidents are collisions, but not all collisions are accidents.

oral or written warning. *See id.* It may place the driver on probation. *See id.* It may suspend or disqualify the driver. *See id.* Or—as relevant here—it may terminate the driver. *See id.* The "imposition of any particular method of discipline" does not "bind management in future disciplinary actions." *Id. See also id.* at 166 (listing similar punishments).

Lambeau sees things differently. She contends Mowrey fired her because of her age. She cites five pieces of evidence. *First*, she cites her positive performance reviews and awards. *See* Pl.'s Resp. at 12–13. *Second*, the owner of Grand Island saw her with a cane two weeks before her termination, *see* Lambeau Dep. at 95:22–24, and other employees knew she was going on Medicare shortly after turning sixty-five, *see id.* at 96:2–5. *Third*, for "the last year, year and half" before her termination, "new drivers who [were] getting paid less were getting the miles." *Id.* at 96:6–9. *Fourth*, her termination occurred the day after her she turned sixty-five. *See id.* at 96:12–17. *Finally*, Grand Island placed four drivers on probation for speeding and one driver on probation after he failed to report an accident. *See* Pl.'s Resp. at 8.

## LEGAL STANDARD

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if a "reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

The Court does not resolve disputed facts, weigh the evidence, or make determinations of credibility. *See Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Instead, the Court draws all permissible inferences

from the facts in the light most favorable to the nonmoving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Still, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## ANALYSIS

In her Complaint, Lambeau brings two claims under the West Virginia Human Rights Act against Grand Island: disability discrimination and age discrimination. *See* Compl. ¶¶ 19–36. Defendants move for summary judgment on both claims. *See* Def.'s Mem. at 15.

### I

In Count I, Lambeau alleges Grand Island unlawfully terminated her because she had a "knee injury that limited her ability to perform tasks of daily living." Compl. ¶ 21.

In her Response to Defendant's Motion & Memorandum for Summary Judgment, Lambeau "withdraws" this claim. Pl.'s Resp. at 2 n.1.

Accordingly, the Court **DISMISSES WITH PREJUDICE** Count I.

### II

In Count II, Lambeau alleges Grand Island unlawfully terminated her because of her age in violation of the West Virginia Human Rights Act. *See* Compl. ¶ 34.

West Virginia is an employment-at-will jurisdiction. *Blanda v. Martin & Seibert, L.C.*, 836 S.E.2d 519, 523 (W. Va. 2019). Under this "long-standing" doctrine, employees "serve at the will and pleasure of their employer." *Id.* They can be fired at "any time, with or without cause," absent a contract or statute to the contrary. *Id.* (citations omitted).

The West Virginia Human Rights Act is a statutory exception to this broad doctrine. The Act promises "equal opportunity for employment" to all West Virginians regardless of certain

protected characteristics—including age. *See* W. Va. Code §§ 16B-17-2; 16B-17-3(k) (defining "age" as "the age of 40 or above"). As such, an employer may not "discriminate against [a protected individual] with respect to . . . tenure, terms, conditions, or privileges of employment." *Id.* § 16B-17-9. Relevant here, employers may not terminate a protected individual because of their age. *See Thompson v. CSX Transp., Inc.*, 582 F. Supp. 3d 355, 364 (S.D. W. Va. 2022).

There are two theories of age discrimination: disparate treatment and disparate impact. *See Knotts v. Grafton City Hosp.*, 786 S.E.2d 188, 193 (W. Va. 2016). Disparate treatment claims center on intentional discrimination—a plaintiff must prove the employer treated it less favorably than others because it belonged to a protected class. *See Morris Mem'l Convalescent Nursing Home v. W. Va. Human Rights Comm'n*, 431 S.E.2d 353, 356 (W. Va. 1993). Disparate impact claims focus on the discriminatory effects of an employer's policies—a plaintiff must prove an employer's facially neutral practice disproportionately impacted a protected class. *See id.* Lambeau pursues a disparate treatment claim. She alleges Grand Island "intentionally discriminat[ed]" against her "based on her status as a person over the age of 40." Compl. ¶ 34.

To succeed on a disparate treatment claim, Lambeau must survive the burden-shifting framework announced in *McDonnell v. Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Knotts*, 786 S.E.2d at 194. It unfolds in three steps. Lambeau must first state a *prima facie* case of age discrimination. *See id.* If she does, Grand Island must point to some legitimate, nondiscriminatory reason for its termination decision. *See id.* If it does, Lambeau must then prove Grand Island's proffered reason is "pretextual." *Id.*

Assuming—without deciding—Lambeau states a *prima facie* case of age discrimination, the Court finds Grand Island sets forth a legitimate, nondiscriminatory reason for its termination:

Lambeau had multiple safety violations within four months. Lambeau fails to prove this reason is "mere pretext." *Skaggs v. Elk Run Coal Co., Inc.*, 479 S.E.2d at 581–82 (W. Va. 1996).

A

Start with Grand Island's Driver's Manual. Admittedly, the Manual is not an exemplar of clarity. At times, it confuses "collision" and "accident." *See, e.g.*, Def.'s Mem., Ex. B.2 at 166 (defining "collision," but then outlining punishments for "accidents"). Still—the Manual is clear where it counts. It requires drivers to report all "accidents" and "collisions" to Grand Island. *See* Ex. B.2 at 158 ("Report immediately, to your Fleet Manager, Safety Department, and Worker's Compensation ALL job-related accidents, not matter how minor."); 167 ("Call the Safety Department [i]mmediately no matter how minor the collision is."); 168 ("If you are in an accident or have damage to report, ALWAYS contact safety first so they can start a report.").

Once reported, Grand Island reviews the incident and—in its discretion—punishes the driver as it sees fit—including through termination. *See id.* at 164, 166 (listing probation, disqualification, oral and written warnings, and discharge/termination as possible punishments). Critically, the Manual does not promise employees a progressive disciplinary system or any specific form of punishment. Indeed, the Manual emphasizes the "imposition of any particular method of discipline" does not "bind management in future disciplinary actions." *Id.* at 164.

On November 30, 2022, Lambeau ran her truck onto gravel. *See* Mowrey Decl. ¶ 18. She then pinned her trailer against a bridge pillar damaging the trailer. *See id.* ¶ 19. Both incidents required a tow truck to help. *See* Lambeau Dep. at 71:19–72:2. Both incidents are "collisions" under the Driver's Manual. *See supra* n.3 (defining "collision").

Less than four months later, on March 6, 2023, Lambeau failed to inspect her truck and trailer. *See* Mowrey Decl. ¶ 20. It turns out her truck had damaged mudflaps and a flat tire. *See*

*id.* The same day, Lambeau hit a power box in the company yard and failed to report the incident. *See id.* ¶¶ 22–23. Like her November 6th troubles, hitting the power box is a "collision" under the Driver's Manual. *See supra* n.3.

Grand Island reviewed these incidents. It decided Lambeau's four-month collision-spree was too much risk to bear. *See* Mowrey Decl. ¶ 12. So it terminated her—a punishment authorized by the Driver's Manual. *See id.* ¶ 13 (stating an incident "does not need to meet the definition of a Department of Transportation (DOT) recordable accident to subject the employee to discipline"); Def.'s Mem, Ex. B.2 at 164, 166 (confirming this statement).

In sum, Grand Island had a legitimate, nondiscriminatory reason for terminating Lambeau: she had multiple safety incidents in a short time. *See Evans v. Techs. Applications & Servs. Co.*, 80 F.3d 954, 960 (4th Cir. 1996) ("Job performance . . . [is] widely recognized as [a] valid, non-discriminatory bas[is] for any adverse employment decision.").

**B**

The burden now shifts to Lambeau. To survive at this stage, Lambeau must prove Grand Island's proffered reason is pretextual. *See Knotts*, 786 S.E.2d at 199. Lambeau may show pretext by persuading this Court that age "more likely motivated" Grand Island's termination decision *or* show Grand Island's explanation is "unworthy of credence." *W. Va. Univ./W. Va. Bd. of Regents v. Decker*, 447 S.E.2d 259, 263 n.3 (W.Va. 1994) (quotation omitted). *See also Barefoot v. Sundale Nursing Home*, 457 S.E.2d 152, 164 (W. Va. 1995) (stating "the plaintiff need not show more than that the defendant's reasons were implausible and, thus, pretextual").

Lambeau fails to show pretext. She makes five arguments. None persuade.

**1**

Lambeau starts by pointing to her positive work performance over the last several years of her employment—including Grand Island's decision to welcome her into its One Million Safe Driving Club. *See* Pl.'s Resp. at 12 (arguing Grand Island welcomed her into this club "within" the four-month period it later scrutinized in its termination decision).

Lambeau ignores the full record. Mowrey did not look at Lambeau's performance reviews (nor did he have to) before making his termination decision. *See* Mowrey Decl. ¶ 28.

Even if he looked at the performance reviews, they do not demonstrate pretext. Admittedly, Lambeau received positive feedback in her reviews. *See* Def.'s Mem., Ex. 3 at 1–2 (listing "Meets Expectations" in 17/20 categories and noting no delivery failures); *id.*, Ex. 4 at 1–2 (listing "Meets Expectations" in 15/20 categories and noting "Joanna does a great job booking on loads and getting the best choice in miles"); *id.*, Ex. 5 at 1–2 (listing "Meets Expectations" in 14/20 categories and noting "[v]ery low service failures which is great").

But these achievements are only half the story. Her performance reviews also showed signs of increasing trouble. As time passed, Lambeau received more "Needs Improvements." *See id.*, Ex. 3 at 1–2 (three in 2019); *id.*, Ex. 4 at 1–2 (five in 2021); *id.*, Ex. 5 at 1–2 (six in 2022). She also failed to reduce her "idle time" to less than 10% over at least three performance cycles despite encouragement. *See id.*, Ex. 3 at 3 (19.87% in 2018 and 13.56% in 2019); *id.*, Ex. 4 at 2 (33.33% in 2021); *id.*, Ex. 5 at 2 (43.1% in 2022). Even more, Lambeau found herself in Grand Island's highest risk category two years in a row. *See id.*, Ex. 4 at 4 (2021); Ex. 5 at 4 (2022).

All told, the performance reviews show Lambeau had several areas of possible improvement. To be sure, Lambeau at times disagreed with Grand Island's assessments. *See, e.g.*, Pl.'s Mem., Ex. 5 at 4 (noting Lambeau "wanted to discuss" her risk score before signing

her performance review); Lambeau Dep. at 77:19–22 (explaining her incidents were "very small, insignificant things to fire someone with ten and half years [of] experience"). But a plaintiff's disagreement with their employer's performance evaluations does not—without more—suggest discrimination or pretext. *See Evans*, 80 F.3d at 960 (finding plaintiff's assertions concerning her own qualifications are insufficient); *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991) (noting numerous deficiencies suggests employer had non-pretextual reasons for termination).

### 2

Lambeau tries again. She stresses Grand Island employees knew she was "[g]etting older." Lambeau Dep. at 95:24. Two weeks before her termination, the owner of Grand Island saw her with a cane. *See id.* at 95:22–24. In addition, at the end of February, Lambeau says she told two employees—but not Mowrey—she "would be going on Medicare" soon. *Id.* at 96:2–5.

Neither of these events suggest age discrimination or pretext. For starters, people use canes for many reasons—age, disability, style. Grand Island states—and Lambeau does not challenge—that other employees at Grand Island use canes without issue. *See* Mowrey Decl. ¶ 38. In addition, Grand Island employs at least fourteen drivers over sixty-five-years old who "performed similar duties" as Lambeau. Pl.'s Resp., Ex. 11 at 1–2 (listing twelve employees and two contractors). These employees suggest Grand Island retains employees without multiple safety policy violations regardless of age. *See id.* at 1 (listing two employees in their seventies).

At most then, Lambeau suggests Grand Island knew she was a protected employee. But knowledge of an employee's protected status does not automatically suggest discrimination or pretext. *See, e.g.*, *Williams v. Arora Hills Homeowners Ass'n*, 2021 WL 2226199, at *8 (D. Md. June 2, 2021) ("Discriminatory motive cannot be inferred merely from the fact that [the

employer] was aware of Plaintiff's protected characteristics."). Indeed, the West Virginia Human Rights Act does not afford additional protections for newly eligible Medicare applicants.

Moreover, both events appear to be isolated occurrences. *See* Lambeau Dep. at 95:3–7 (conceding no one ever made negative comments about her age). Lambeau fails to show whether Mowrey, as decisionmaker in her termination, knew of these comments—let alone whether he let the information influence his ultimate decision. *See Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (finding plaintiff presented no evidence showing age comments were "more than an isolated event" or "had any nexus with the decision to terminate him").

In short, Lambeau does not suggest anyone at Grand Island—let alone Mowrey—responded negatively towards her Medicare announcement or pushed her towards retirement. It appears Lambeau merely put Grand Island on notice of her protected status. *Cf. Thompson*, 582 F. Supp. 3d at 366–67 (explaining conduct surrounding an employee's age must also be "sufficiently egregious" to raise an inference of discrimination because asking questions about an employee's future and retirement are "reasonable business inquiries").

### 3

Lambeau next argues for the "last year, year and half" before her termination, "new drivers who [were] getting paid less were getting the miles." Lambeau Dep. at 96:6–9. Yet, Lambeau provides no proof supporting this assertion other than her "naked opinion." *Goldberg v. B. Green Co.*, 836 F.2d 845, 847 (4th Cir. 1988). This case is about Grand Island's perception—not Lambeau's self-assessments. At this stage, her self-serving testimony is not enough. *See Warch*, F.3d at 521 (explaining vague claims concerning disparate treatment of younger employees "does not create any inference that age was a motivating factor"—let alone a dispositive factor—in a termination). *Cf. King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003)

(collecting cases and concluding a plaintiff's "own testimony, of course, cannot establish a genuine issue as to whether [the plaintiff] was meeting [the employer's] expectations").

**4**

Lambeau pivots. She stresses her termination occurred the day after she turned sixty-five. *See* Lambeau Dep. at 96:12–17. Fair enough. But Mowrey—the decisionmaker—did not know Lambeau's birthdate when he terminated her. *See* Mowrey Decl. ¶ 30. At most, the record suggests Mowrey knew Lambeau was sixty-four or sixty-five years old. *See* Def.'s Mem., Ex. B.3 (listing age on the November 30th report); *id.*, Ex. B.4 (listing age on first March 6th report); *id.*, Ex. B.5 (listing age on second March 6th report). This is not enough to show pretext. Indeed, Lambeau entered the protected class in 1998 when she turned forty—fourteen years before she joined Grand Island. Again, the West Virginia Human Rights Act does not give special protections to those turning sixty-five. More importantly, Lambeau forgets her termination occurred a week after she failed to report she hit a power box on Grand Island property.[4]

Without more, the fact that Lambeau's termination occurred the day after she turned sixty-five appears to be an unfortunate—but not unlawful—coincidence.

**5**

Lambeau makes one last pitch. She relies on statistics and comparators to argue Grand Island placed several drivers on probation for safety policy violations of instead of opting for immediate termination. *See* Pl.'s Resp. at 8. Grand Island retorts. It argues none of these comparators are "similarly situated" to Lambeau. Def.'s Mem. at 3–4.

---

[4] Lambeau does not claim she was retiring or that Grand Island tried to unlawfully speed up her retirement. *See Thompson*, 582 F. Supp. 3d at 366–67 (suggesting some questions and conduct from an employer about an employee's retirement plans may create an inference of discrimination). Furthermore, Lambeau forgets Grand Island still employs several individuals well over sixty-five. *See* Pl.'s Resp., Ex. 11 at 1–2 (listing employees).

The Court agrees with Grand Island. A plaintiff may raise an inference of age discrimination by showing the employer treated a substantially younger, similarly situated employee differently than the plaintiff. *See, e.g.*, *Thompson*, 582 F. Supp. 2d at 368. This inquiry is one of degree; there are no hard-and-fast rules. A comparator is "substantially younger" when it is ten or more years younger the plaintiff. *See Knotts*, 786 S.E.2d at 198–99. A comparator is "similarly situated" when the "plaintiff and comparator dealt with the same supervisor, were subject to the same standards[,] and engaged in the same conduct." *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223–24 (4th Cir. 2019). This is a high bar. *See Doe v. Marshall Univ. Bd. of Governors*, 683 F. Supp. 3d 522, 540 (S.D. W. Va. 2023) (requiring an "extremely high degree of similarity" between the plaintiff and the comparator) (quoting *Willis v. Town of Marshall, N.C.*, 275 F. App'x 227, 233 (4th Cir. 2008)).

Here, Lambeau provides the following chart which lists the ages and reasons for forty-eight employees Grand Island terminated for "Safety Dept/Safety Policy" reasons—the same reason Grand Island used to terminate Lambeau.

**TABLE I:**

**Grand Island Employees Terminated for "Safety Dept/Safety Policy" Violations[5]**

| Initials | Age at Separation | Duration of Employment (years) | Description for Separation (No Progressive Discipline Unless Noted) |
|---|---|---|---|
| A.A. | 49 | 1.8 | didn't pass training |
| A.S. | 36 | 3.1 | too many incidents in short amount of time |
| A.T. | 54 | 5.3 | cell phone violation policy with accident |
| A.Y. | 49 | 1.5 | didn't agree with safety policy |
| B.G. | 60 | 3.9 | multiple accidents in short amount of time |
| C.A. | 61 | 49.5 | multiple accidents in short amount of time |
| D.A. | 26 | 11.6 | major speeding violation |

---

[5] This table is adapted from Exhibit 11 of Plaintiff's Response in Opposition to Defendant's Motion & Memorandum for Summary Judgment. It uses initials and ages (not birthdates) to protect the privacy of non-parties.

| | | | |
|---|---|---|---|
| D.A. | 29 | 0.3 | smoking marijuana in truck on video |
| D.F. | 75 | 25.2 | tried to run someone off the road on purpose |
| D.K. | 40 | 1.1 | passing on right should of road |
| D.R. | 55 | 5.4 | major accident |
| D.T. | 49 | 5.1 | Falling asleep and wrecking truck plus two other incidents close to same time |
| D.W. | 66 | 11.5 | DOT physical not passed |
| D.W. | 55 | 0.3 | coded wrong voluntarily quit |
| E.G. | 41 | 2.3 | multiple accidents in short amount of time |
| E.M. | 32 | 0.3 | didn't pass training |
| E.V. | 60 | 2.4 | didn't pass training |
| E.W. | 48 | 4.6 | hit 7 bridges in one day |
| F.C. | 61 | 3 | unreported accident |
| I.D. | 50 | 3.7 | 3 cell phone policy violations |
| J.A. | 45 | 2.9 | multiple incidents in short amount of time |
| J.B. | 59 | 20.7 | failed drug test |
| J.E. | 48 | 0.3 | failed hair test |
| J.G. | 42 | 0.3 | failed hair test |
| J.H. | 70 | 6.6 | 3 cell phone policy violations |
| J.K. | 60 | 25.3 | unreported accident |
| Joanna Lambeau | 65 | 126 | multiple accidents in short amount of time |
| J.P. | 39 | 3.7 | passenger release violation |
| J.W. | 32 | 11.8 | refused to complete remedial training |
| K.B. | 61 | 1.3 | multiple accidents in short amount of time |
| K.M. | 57 | 28.2 | multiple incidents in short amount of time |
| M.D.I. | 33 | 0.1 | falsified application |
| M.T. | 48 | 10.5 | charged with DUI |
| M.T. | 53 | 31.2 | multiple accidents in short amount of time |
| N.M. | 27 | 14.4 | probation for speeding no improvement |
| O.R. | 40 | 2 | went solo needed more training but refused to go back out with trainer |
| P.F. | 35 | 15.1 | probation for speeding and following distance had major collision while on probation |
| P.M. | 25 | 6.7 | code wrong; terminated due to late loads and safety |
| P.S. | 57 | 2.9 | refusal of drug test |
| R.E. | 35 | 3.7 | abused equipment due to road rage |
| R.L. | 76 | 23.3 | passing on right shoulder |
| R.R. | 68 | 119.9 | placed on probation for accident had another accident before probation was over |
| R.S. | 57 | 35.4 | DOT physical |

| S.K. | 39 | 7.6 | coded wrong voluntarily quit |
| S.L. | 39 | 2.2 | placed on probation for not reporting accident; had 3 accidents 2 weeks before we could get him back to be terminated |
| S.R. | 52 | 6.3 | probation for major speeding violation then had accident while on probation |
| T.S. | 41 | 1.1 | unreported accident |
| W.E. | 62 | 26.4 | HOS & Speeding Violations - Probation without improvement |

This data does not help Lambeau. The Court assumes these employees interacted with the same supervisor (Mowrey) and were subject to the same policies and standards as Lambeau. *See Haynes*, 922 F.3d at 223–24. This leaves one question: Did Grand Island treat employees fifty-five years old and younger with multiple incidents in a short amount of time *differently* than Lambeau? *See id*. The data speaks for itself: it did not. Grand Island terminated all eight employees with multiple incidents in a short period of time. Of these, four were "substantially younger" than Lambeau—E.G. (age 41), M.T. (age 53), A.S. (age 36), and J.A. (age 45). *See* Pl.'s Resp., Ex. at 5–6. This evidence suggests Grand Island terminated employees for multiple safety policy violations irrespective of age. The Court finds no error in this practice. *See Zeuner v. Rare Hosp. Int'l, Inc.*, 338 F. Supp. 3d 626, 636 (M.D.N.C. 2004) (explaining an employer can terminate employees for bad acts "so long as it applies [its] criterion 'alike to members of all [ages]'") (quoting *McDonald v. Sante Fe. Trail Trans. Co.*, 427 U.S. 273, 283 (1976)).

Lambeau ignores these comparators. Instead, she urges the Court to look at W.E., R.L., R.R., P.F., S.R., N.M., and S.L. *See* Pl.'s Resp. at 7–8, 14–15 (using these employees as comparators). None of these employees are good comparators. *See Gupton v. N.C. Dep't of Pub. Safety*, 2019 WL 1546935, at *2 (E.D.N.C. Apr. 9, 2019) (emphasizing the "similarly situated" requirement mandates two employees "circumstances be *nearly identical*.") (emphasis added).

Start with W.E., R.L., and R.R. Each of these employees was *older*—not *younger*—than Lambeau when terminated. W.E. was sixty-three years old. *See* Pl.'s Resp., Ex. 11 at 5. R.L. was

seventy-six years old. *See id.* R.R. was sixty-eight years old. *See id.* This alone dispels similarity. *See Knotts*, 786 S.E.2d at 198 (stating "substantially younger" "generally" means "[a]ge differences of ten or more years") (quotation omitted).

Moreover, none of these employees engaged in similar conduct to Lambeau. Remember—Lambeau had multiple incidents in a short period of time. W.E., on the other hand, had "HOS," speeding violations, and probation without improvement. *See id.*; Mowrey Dep. at 59:8–77:19 (not exploring these reasons further). R.L. had single instance of passing on the right shoulder—a "pretty serious" offense. *Id.* at 69:11. And R.R. had a "close call" while driving forcing him "to take the ditch." *Id.* at 75:23. Yes—Grand Island put R.R. on probation for six months. *See id.* at 76:16–25. But his "close call" was due to a "following distance" issue—a coachable lesson. *Id.* at 76:3–8. In contrast, Grand Island did not put Lambeau on probation after her November 6th incident because the incident did not require "much coaching" to correct. *Id.* at 78:17–18. Similarly, her two unreported March 6th incidents meant another driver "had to deal with" her mistakes—something probation would not readily fix. *Id.* at 80:5.

All told, W.E., R.L., and R.R. did not engage in similar conduct before probation or termination. As such, they are not adequate comparators.

Consider next P.F., S.R., and N.M. These employees are substantially younger than Lambeau. *See* Pl.'s Resp. Ex. 11 at 5 (P.F.–age 35; S.R.–age 52; N.M.–age 27). But none them engaged in similar conduct to Lambeau. Rather, Grand Island placed each of these employees on probation for speeding. *See* Pl.'s Resp., Ex. 11 at 5. Once on probation, P.F. had a "major collision," S.R. had an "accident," and N.M. did not improve. *Id.* So Grand Island fired them.

At best, this evidence suggests Grand Island places employees caught speeding on probation before termination. This does not help Lambeau; she did not speed. She ran her truck

off-road onto gravel. *See* Mowrey Decl. ¶ 18. She then pinned her truck against a bridge pillar. *See id.* ¶ 19. She then failed to inspect her truck and hit a power box. *See id.* ¶¶ 20–22. She then failed to report both incidents. *See id.* P.F., S.R., and N.M. did none of this. In fact, as soon as P.F. and S.R. acquired multiple incidents in a short period of time, Grand Island fired them—just like it did with Lambeau. *See* Mowrey Decl. ¶ 24.

Finally, consider S.L. S.L. is substantially younger than Lambeau. *See* Pl.'s Resp., Ex. 5 at 11 (age 39). Still, S.L. failed to report an accident. *See* Pl.'s Resp. at 5. Although Grand Island wanted to terminate S.L., S.L. was too far away from headquarters. *See id.* So Grand Island placed S.L. on probation. While on probation, S.L. had three accidents. *See id.*

Lambeau is different. For starters, S.L. went on probation after failing to report a single incident. *See id.* Curiously, this decision appears to be an exception to Grand Island's typical pattern of punishment made to accommodate his distance from headquarters. *See id.*, Ex. 11 at 3–6 (explaining Grand Island fired J.K., F.C., and T.S. after a single unreported incident). Lambeau does not suggest she had a similar distance issue. Nor could she. She ran into a power box on Grand Island property. *See* Mowrey Dep. at 68:7–8. Finally, Grand Island fired S.L. left after S.L. acquired multiple incidents in a short period of time—just like Lambeau.

Overall, Lambeau fails to provide a single employee with multiple safety policy incidents in a short period of time who kept their job. In fact, the record suggests Grand Island fired every employee with multiple incidents in a short amount of time, *see* Pl.'s Resp. at 3–6 (K.M., J.A., A.S., K.B., M.T., C.A., J.L., B.G., E.G.), and every employee who did not report a collision or accident, *see id.* (J.K., F.C., T.S.). Neither group seems constructed with age in mind.

In sum, the Court finds Grand Island "comes forward with evidence of a dispositive, nondiscriminatory reason as to which there is no real dispute and which no rational trier of fact could reject." *Knotts*, 786 S.E.2d at 199 n.13 (quoting *Barefoot*, 457 S.E.2d at 164 n.19).

C

This case is about a termination. Grand Island argues it fired Lambeau for multiple safety policy violations over a short period of time. Lambeau pushes back. She stresses her safety policy violations were "very small, insignificant things." Lambeau Dep. at 77:19–22. She believes someone with "ten and half years [of] experience" should not be fired so easily. *Id.* Maybe so. But this misses the point. In September 2022, Grand Island placed Lambeau in its highest risk category. In November 2022, Lambeau required a tow truck to her rescue her not once, but twice. In March 2023, Lambeau failed to inspect her truck and hit an electrical power box on company property. She failed to report both incidents. Eventually, Grand Island grew tired and terminated her. Nothing suggests age played any role—let alone a dispositive role—in its termination decision.

Accordingly, the Court **GRANTS** summary judgment to Defendant on Count II.

## CONCLUSION

The Court **DISMISSES WITH PREJUDICE** Count I of Plaintiff's Complaint. *See* ECF No. 1. The Court **GRANTS** summary judgment to Defendant as to Count II.

The Court **DIRECTS** the Clerk to send a copy of this Order and Notice to counsel of record and any unrepresented parties.

ENTER: July 16, 2024

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE